MOSSMAN v. MILLENBACH MOTOR SALES.

1. PRINCIPAL AND AGENT—APPARENT AUTHORITY—DETERMINATION.
    The apparent authority of an agent to act as the representative of his principal is to be gathered from all the facts and circumstances properly admitted in evidence and ordinarily is a question of fact for the jury's determination.

2. SAME—RELIANCE ON APPARENT AUTHORITY.
    Persons dealing with an agent may rely on his apparent authority.

3. Same—Estoppel.

Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it.

4. Same—Express, Implied and Apparent Authority.

Responsibility of principal to third persons is not confined to cases where a contract is made under his express or implied authority but extends also to cases where the agent is acting within the scope of his usual employment, or has been held out to the public or third party as having competent authority, although, in the particular instance, the agent has exceeded or violated his instructions and acted without authority.

5. Same—Powers of Agent.

Persons dealing with an agent have the right to act upon the presumption that he is authorized to do and perform all things within the usual scope of his principal's business as the powers of an agent are *prima facie* coextensive with the business intrusted to his care.

6. Corporations—Action Through Agents.

A corporation can act only through its agents.

7. Same—Principal and Agent—Salesman—Used Car Manager—Authority—Exchange of Cars.

Corporate defendant *held,* liable to plaintiff for loss sustained by latter when its salesman, who had conducted a previous deal with plaintiff by taking his used car and check to defendant for a truck, took the truck and title thereto and gave plaintiff a receipt as agent of defendant, sold the truck, pocketed the proceeds and disappeared and failed to turn over a new car in exchange as had been agreed would be done, where plaintiff had ascertained by telephone from defendant's used car manager that deals with such salesman would be borne out by defendant; it being clear the salesman had the apparent, if not the actual, authority to enter into the transaction on behalf of defendant.

8. Principal and Agent—Question for Jury—Exchange of Cars.

Question of automobile salesman's agency to act in behalf of defendant corporation in sale of its own or third person's

cars *held*, for jury in action brought by one who had agreed to exchange a truck for a new car and turned over truck and title to salesman who sold truck and absconded with proceeds.

9. Trial—Examination of Witnesses by Court.

In trial of action against corporate automobile dealer where testimony elicited as to scope of agency of salesman, who had negotiated an exchange of cars with plaintiff, secured plaintiff's truck, sold it and absconded with proceeds and failed to turn over car to be exchanged, was confusing and such matter was for determination of jury, examination of witness by trial court *held*, extensive but not unfair and not reversible error.

10. Appeal and Error—Miscarriage of Justice.

Record in action against corporate automobile dealer whose salesman had negotiated exchange of plaintiff's truck for a new car, obtained truck and title thereto and absconded with proceeds from sale of truck, examined and errors complained of *held*, not to have resulted in a miscarriage of justice (3 Comp. Laws 1929, § 15518).

Appeal from Wayne; Maher (John J.), J., presiding. Submitted April 20, 1938. (Docket No. 138, Calendar No. 39,517.) Decided June 6, 1938. Rehearing denied October 3, 1938.

Assumpsit by Robert Mossman, doing business as Mossman Drive Yourself System, against Millenbach Motor Sales, a Michigan corporation, for the value of plaintiff's truck which was sold by defendant's agent. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Howard A. Donnelly* (*Dalton G. Seymour*, of counsel), for plaintiff.

*John W. Babcock* (*Charles E. Duffy*, of counsel), for defendant.

McAllister, J. Plaintiff is the owner of an automobile rental company. In October of 1934, intending to purchase a truck, he called the office of defendant, a motor sales corporation. The telephone

switchboard operator of defendant company connected plaintiff with the used car lot of defendant, and he thereupon had a conversation with Herbert Stout, one of defendant's salesmen.   Thereafter plaintiff proceeded to defendant's used car lot where he talked to one Smith, an agent of defendant, who was the only person at the lot and appeared to be in charge.   As a result of his conversation, he purchased a Ford truck from defendant company, paying therefor the price of $707.   This payment was made by an allowance of $455 given by defendant company to plaintiff on a Chevrolet automobile. Plaintiff gave a check payable to the order of defendant company for the balance of $252.   The truck was delivered to plaintiff by Smith.   Plaintiff upon delivery gave Smith the check for $252 as the cash balance on the sale.   The check was payable to defendant corporation and upon receipt of the check, Smith, as agent for defendant, gave plaintiff a receipt in full for the entire purchase price of $707.

Plaintiff kept the truck from October, 1934, until March, 1935, at which time he desired to sell it and thereupon called the defendant company by telephone, asked to be connected with the used car lot and asked to speak with Smith.   After a telephone conversation with Smith, the latter came to plaintiff's place of business and after discussing the matter of selling the car went away.   Some time after, Smith called plaintiff and told him that he had a buyer for the truck.   The proposition that Smith made to plaintiff was that plaintiff was to have a net credit of $570 for which he was to receive a new car in exchange.   On March 27, 1935, Smith called plaintiff and told him that he would come to get the truck. Plaintiff then called defendant corporation and asked for someone in authority in the office and was

referred to Mr. Elmer Crego, the used car manager of defendant corporation. Plaintiff testified that he asked Crego whether Smith was employed by defendant corporation at that time, and if he had authority to take plaintiff's truck, and whether it would be all right to give Smith the truck and the title. He claims that Crego stated: "Yes, Al is all right, any deal you make with Al, we will stand back of it." After this telephone conversation with Crego, Smith appeared at plaintiff's place of business and received the truck and the title to the vehicle from plaintiff, in return for which he gave a written receipt to plaintiff as agent for defendant corporation. Smith, thereafter, sold the truck to a third party, pocketed the proceeds and disappeared.

Plaintiff brought suit to recover from defendant his loss, on the ground that Smith was acting as agent for defendant when he received the car and title from plaintiff, and that, therefore, defendant is liable to plaintiff for the loss which plaintiff suffered through the acts of such agent.

The case was tried before a jury and plaintiff had verdict and judgment from which defendant appeals. The main question in the case is whether Smith was acting as an agent of defendant in the transaction in question.

In 21 R. C. L. p. 856, it is stated:

"The apparent authority of an agent to act as the representative of his principal is to be gathered from all the facts and circumstances in evidence, and ordinarily this is a question of fact for the jury's determination."

In *Faber* v. *Eastman, Dillon & Co.*, 271 Mich. 142, the court said:

"It is elementary that persons dealing with an agent may rely on his apparent authority (*Marx* v.

*King*, 162 Mich. 258), and that such authority is to be gathered from all of the facts and circumstances properly admitted in evidence. *Haines* v. *Leonard Warehouses, Inc.*, 199 Mich. 580; *Kerns* v. *Lewis*, 249 Mich. 27. This question was discussed at length by Mr. Justice McDonald, speaking for the court, in *Maryland Casualty Co.* v. *Moon*, 231 Mich. 56, and the following from 21 R. C. L. p. 856 was quoted with approval (p. 62):

" 'Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it.' "

In Story on Agency (9th Ed.), § 443, it is said:

"But the responsibility of the principal to third persons is not confined to cases where the contract has been actually made under his express or implied authority. It extends further, and binds the principal in all cases where the agent is acting within the scope of his usual employment, or has held out to the public, or to the other party, as having competent authority, although, in fact, he has, in the particular instance, exceeded or violated his instructions, and acted without authority. For, in all such cases, where one of two innocent persons is to suffer, he ought to suffer who misled the other into the contract, by holding out the agent as competent to act, and as enjoying his confidence."

Persons dealing with an agent have the right to act upon the presumption that he is authorized to do and perform all things within the usual scope of his principal's business.

"The general rule is that the powers of an agent are *prima facie* co-extensive with the business intrusted to his care." *Grossman* v. *Langer*, 269 Mich. 506, 510.

In an action against a principal by one dealing with an agent, the apparent authority of the latter must be gathered from all the facts and circumstances properly admitted in evidence. *Grinnell* v. *Carbide & Carbon Chemicals Corp.*, 282 Mich. 509.

A principal who has placed his agent in such a situation that a third person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming the agent is authorized to perform a particular act in behalf of the principal, is estopped to deny agent's authority to perform it. *Grinnell* v. *Carbide & Carbon Chemicals Corp.*, *supra*.

In this case, defendant was a corporation and could act only through its agents. *Garey* v. *Kelvinator Corp.*, 279 Mich. 174. Smith had previously acted as agent for defendant in the sale of an automobile to plaintiff, had received a check payable to defendant corporation and had given a receipt on behalf of the company as its agent. The manager of defendant's used car department testified that Smith was a used car salesman under him and that Smith also would sell new cars for defendant company. Crego, as manager of defendant's used car department, was in charge of the agents and employees of defendant who were engaged in the selling of used cars and new cars. He was naturally the person who could give plaintiff information as to Smith's authority to act for the company.

Crego was in charge of appraisal of automobiles for the purpose of making allowances on new cars. In this case he went to plaintiff's place of business and appraised the truck in question for a trade on a basis that was not, however, carried out. While all orders were taken subject to the acceptance of defendant company, Crego had authority in case of a used car transaction to act for defendant in binding

a transaction involving the taking in of an automobile.

"Where a corporation has intrusted a manager with the general supervision of a particular branch of its business, it invests him with the power of a general agent, co-extensive with the business intrusted to his care and is bound by his contracts on its behalf made within the apparent scope of his authority." *Farneth* v. *Commercial Credit Co.*, 313 Pa. 433, 440 (169 Atl. 89, 92).

Plaintiff had the right to rely on Crego's assurances that it would be proper to allow Smith to take the truck and title thereto, and that the defendant would stand back of the transaction with Smith.

Plaintiff's agreement with Smith was that he was to receive a new car in exchange for the truck if it could be sold at the agreed price. Smith had apparent authority to sell new cars as well as used cars. He also had apparent authority to receive cars, traded in as purchase payments on other cars because of the fact that he previously had taken in as part payment on the truck, plaintiff's Chevrolet automobile.

From the evidence in the case, it is clear that Smith was an agent of defendant company, clothed with apparent authority, if not actual authority, to enter into the transaction in question on behalf of the corporation.

Counsel for defendant complain of the conduct of the trial court in its examination of witnesses and asserts that the nature of the questioning was unfair and prejudicial to defendant's rights. No objection, however, was made to such examination by the court. Much of the conduct complained of relates to the court's examination of the witness Crego with relation to the circumstances and explanations given by the witness with reference to the purchase of the

truck by plaintiff in 1934. Although plaintiff was the purchaser of the truck, the invoice was made out to "A. F. Frost." Plaintiff explained that this was to avoid payment of the sales tax by defendant corporation. Crego attempted to give his version of such situation by an explanation that the truck was sold to Frost but paid for by plaintiff, and that the transaction in effect probably was a sale by Smith, acting on behalf of Frost.

In the questioning of Crego by the court with regard to this transaction, the witness said:

"The only way I could explain that would be that, as shown on these copies, was a Chevrolet 1934 coach accepted in trade and it is possible that the appraisal price of this coach might have been this $455 amount, and it was possible for a salesman to buy this Chevrolet coach from Frost for $400 or a lesser amount than this and thereby save Mossman some money on the deal. * * * The way this invoice reads it was a matter of record at Millenbach Motor Sales that this car was sold to Frost and paid for by someone, the check having been signed by Mossman. * * * The assumption in this case was that the car was sold to Frost and whether I made the check out or you did, or Mr. Babcock did, as long as the check was made, that is all they cared about because they got their money and they billed the car to Frost or whoever signed the order. * * * It is possible that Smith might have sold the car from Frost to Mossman rather than from Millenbach to Mossman. * * * According to the receipt on the invoice it says, 'Received payment in full by check $252.' It doesn't say who paid it."

If, in the first transaction, Smith had sold a car for Frost to plaintiff and in such transaction acted on behalf of defendant company, such a circumstance would indicate that Smith was authorized by

defendant company to sell cars of third parties on behalf of defendant company.

In *Pettinger* v. *Alpena Cedar Co.,* 175 Mich. 162, 165, in a case involving the alleged apparent authority of an agent, the court said:

"Inasmuch as there was no proof that Gannon had any actual authority to act for the defendant, the question here raised is one of agency by estoppel. 31 Cyc. p. 1219. This rule has been stated as follows:

" 'It is a general rule that when a principal by any such acts or conduct has knowingly caused or permitted another to appear to be his agent either generally or for a particular purpose, he will be estopped to deny such agency to the injury of third persons who have in good faith and in the exercise of reasonable prudence dealt with the agent on the faith of such appearances. This rule is particularly true where the principal has knowingly by such acts and conduct recognized the agency through a long course of dealing or in many transactions.' 31 Cyc. p. 1237.

"In *Clark* v. *Dillman,* 108 Mich. 625, it was said: 'It is undoubtedly the law that a person may be bound by the representations and acts of another, as agent, where there has been such a holding out as reasonably to lead one dealing with him to believe in the existence of such agency. But all of the elements of an estoppel must be present. There must be conduct calculated to mislead, and it must be under circumstances which justify the claim that the alleged principal should have expected that the representations would be relied and acted upon; and, further, it must appear that they were relied and acted upon, in good faith, to the injury of an innocent party.' "

"Where the third person has ascertained the general character or scope of the agency, he is authorized to rely upon the agent having such powers as naturally and properly belong to such character, and, in the absence of circumstances putting him upon inquiry, is not bound to inquire for secret qualifications or limitations of the apparent powers of the agent." 2 C. J. p. 564.

The question of Smith's agency was a question of fact for the jury.

Such an explanation of the first transaction between Smith and plaintiff as given by Crego would tend to strengthen plaintiff's case and if Smith had authority from the company to engage in such a transaction, it was a question for the jury as to whether he had the same authority to sell plaintiff's truck to a third party while acting as agent of the company. However, the explanation was so confusing that it is not difficult to see why the court attempted to clarify the matter. Although the examination of the witness by the trial judge was extensive, a careful examination of the record does not convince us that it was unfair. Whenever objection was made regarding specific questions during the interrogation by the court, it appears that on all proper occasions, the trial judge gave every consideration to defendant's counsel and modified the examination accordingly. The examination revealed only a legitimate and worthy desire on the part of the court to ascertain the actual facts in a situation fraught with contradiction and confusion. There was no reversible error on the part of the trial court in such examination.

With regard to other errors complained of, we have carefully reviewed the record and after an examination of the entire cause, we do not find that it appears the matter complained of resulted in a miscarriage of justice. 3 Comp. Laws 1929, § 15518 (Stat. Ann. § 27.2618); *Sullivan* v. *Fidelity & Casualty Co. of New York,* 208 Mich. 68; *Barras* v. *Barras,* 192 Mich. 584; *First National Bank of Ann Arbor* v. *Holmes,* 213 Mich. 41.

The judgment is affirmed, with costs to plaintiff.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred.