### FABER v. EASTMAN, DILLON & CO.

1. Principal and Agent—Apparent Authority.
   Persons dealing with an agent may rely on his apparent authority.

2. Same—Evidence.
   In action against principal by one dealing with an agent, the apparent authority of the latter must be gathered from all the facts and circumstances properly admitted in evidence.

3. Attorney and Client—Trial—Evidence—Apparent Authority.
   In action against brokers to recover proceeds of check given their alleged agent for deposit to plaintiff's account, latter's attorneys were chargeable with knowledge that apparent authority of agent on which plaintiff relied must have been evidenced by acts and conduct disclosed to her and of which brokers had, or were chargeable with, knowledge.

4. Appeal and Error—Improper Admission of Testimony—Apparent Authority.
   Admission of testimony in action against brokers for proceeds of check delivered to their alleged agent on issue of his apparent authority by witness who testified as to agent's conduct in defendants' office and as to agent's representation of defendants in witness' employer's office *held,* reversible error even though largely stricken from the record later.

5. Principal and Agent — Apparent Authority — Question for Jury.
   Question as to whether defendant brokers clothed one to whom plaintiff delivered check for deposit to her account with them with apparent authority to receive check for that purpose *held,* for jury in her action against brokers for proceeds of check deposited to account of the alleged agent who subsequently absconded.

Appeal from Wayne; Toms (Robert M.), J. Submitted January 8, 1935. (Docket No. 12, Calendar No. 38,033.) Decided April 8, 1935. Rehearing denied May 17, 1935.

Assumpsit by Alma Faber against Eastman, Dillon & Company, a copartnership composed of Herbert L. Dillon and others, to recover sums turned over to alleged agent of defendants. Verdict and judgment for plaintiff. Defendants appeal. Reversed, and new trial granted.

*Wilkinson, Lowther & O'Connell,* for plaintiff.

*Thomas B. Moore,* for defendants.

NELSON SHARPE, J.   Plaintiff claims that on February 7, 1930, she delivered her personal check for $5,000, certified by the bank on which it was drawn, to John Ogden, to whom it was made payable, for deposit to her account with the defendants, a firm engaged in the brokerage business. He indorsed it and deposited it with the defendants to his own account. This action is brought to recover the amount thereof and interest thereon. Plaintiff had verdict and judgment, from which the defendants have taken this appeal.

The plaintiff testified that she first became acquainted with Ogden in December, 1929; that he came into her hosiery shop and made a purchase; that thereafter he called on her at intervals and they became quite intimate; that he frequently telephoned her from defendants' office and she reached him by telephone at the same place; that in January, 1930, she deposited with the defendants for sale certain stocks which she owned, delivering them, as she recalled, to Ogden; that she called at defendants' office on several occasions and saw Ogden with his hat and coat off talking to customers and once behind "the cage;" that she went with him into the main office and watched the stock board; that she ordered the defendants to sell her stock,

and that Ogden brought to her the defendants' check for $5,000; that Ogden then asked her if she "wanted to buy some more stocks;" that after some consultation she gave him her personal check for $5,000 with which to purchase other stocks, and the next day he brought her a receipt from the defendants for $5,000, drawn to Ogden, but with the words "For Faber acct.," written after his name therein. She at first testified that she gave him the check she had received from the defendants, but afterwards corrected this statement when confronted with the fact that she had deposited it in her personal bank account. She admitted that she had received several statements of her account with the defendants after the check was given to Ogden, and that the $5,000 item did not appear thereon, and that she had acknowledged the correctness thereof. Defendants produced the carbon copy of the receipt given Ogden for the $5,000, and the words "For Faber acct." did not appear thereon. They also submitted evidence that Ogden was not in their employ at that time. It appears that he absconded in February, 1931, and had not been heard of at the time of the trial.

In his instructions to the jury the trial court said:

"To recapitulate briefly, the plaintiff must establish by a fair preponderance, and that is meant by some overweight of truth in her favor, first, that the defendants knowingly permitted Ogden to so act in his relation to Miss Faber that a reasonably prudent person exercising business caution would have been justified in believing that Ogden was their agent in the capacity of a customer's man. That is the first fact.

"Second: The plaintiff must further establish by a preponderance of evidence that if Ogden was an agent of the nature I have just described, that it

was within the scope of his implied agency to accept the money which Miss Faber paid him on behalf of the brokerage house.''

It is elementary that persons dealing with an agent may rely on his apparent authority (*Marx* v. *King,* 162 Mich. 258), and that such authority is to be gathered from all of the facts and circumstances properly admitted in evidence. *Haines* v. *Leonard Warehouses, Inc.,* 199 Mich. 580; *Kerns* v. *Lewis,* 249 Mich. 27. This question was discussed at length by Mr. Justice McDONALD, speaking for the court, in *Maryland Casualty Co.* v. *Moon,* 231 Mich. 56, and the following from 21 R. C. L. p. 856, was quoted with approval (p. 62):

''Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it.''

Counsel for the plaintiff in their brief concede that the question involved was ''whether or not appellants clothed John J. Ogden with such apparent authority as would make them liable for his action in receiving from appellee the sum of $5,000 to deposit in her account with them.''

In view of the issue thus formed and on which the jury were called upon to determine the question of defendants' liability, the evidence should have been confined as closely as possible to facts and circumstances having a direct bearing thereon. The plaintiff's attorneys were chargeable with knowledge that the apparent authority of Ogden on which plaintiff relied must have been evidenced by acts

and conduct disclosed to the plaintiff herself, and of which the defendants had, or were chargeable with, knowledge.

John C. Faber, a nephew of plaintiff, testified that the firm of W. E. Moss & Company, for whom he was working, had bought stocks through Ogden, representing the defendants. He also testified as to Ogden's conduct in defendants' office, and plaintiff's counsel sought to interrogate him as to his "business deals" with defendants in the latter part of the year 1930. One William Darkwood also testified to Ogden's acts and conduct in defendants' office. The testimony of both of these witnesses was received over defendants' objection thereto. That of Darkwood and the greater part of that of John C. Faber were afterwards stricken from the record, but in view of the issue presented we cannot say that the jury were not, at least to some extent, influenced thereby. In our opinion its introduction constituted reversible error.

We have examined this record with care. The evidence in many respects tends strongly to support defendants' claim that there was no such holding out of Ogden as their agent as was necessary to sustain the verdict. But, in our opinion, an issue of fact was presented which it was the duty of the court to submit to the jury, and we find no error in the instructions given. Several of defendants' requests to charge were refused, and we think properly so, as they, in effect, asked for a directed verdict.

For the reason above stated, the judgment is reversed and set aside, with costs to defendants, and a new trial granted.

Potter, C. J., and North, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.